**Kyle Douglas MEADE, Petitioner,**

v.

**James D. COX, Superintendent, Virginia State Penitentiary, Respondent.**

**Civ. A. No. 69–C–117–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

Feb. 16, 1970.

**234**

Gerald L. Baliles, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before the court on a petition for a writ of habeas corpus filed *in forma pauperis* by Kyle Douglas Meade, a state prisoner, pursuant to 28 U.S.C. § 2241. The petition was filed in the United States District Court for the Eastern District of Virginia, and by order dated November 12, 1969, was transferred to this court.

Petitioner is currently serving a sentence of eighteen years in the Virginia State Penitentiary, pursuant to a judgment of the Circuit Court of Russell County, imposed on July 3, 1967, for murder. The conviction resulted after a trial by jury in which petitioner, represented by court-appointed counsel, entered a plea of not guilty.

After conviction petitioner, with the aid of counsel, filed a notice of appeal and assignment of error. Assigned as error were the grounds on which petitioner is presently seeking habeas corpus relief. After consideration the Virginia Supreme Court of Appeals on March 6, 1968, rejected petitioner's contentions and affirmed the conviction. On October 17, 1968, petitioner filed a petition for a writ of habeas corpus in the Circuit Court of Russell County alleging essentially the same grounds heard on appeal. This petition was denied and dismissed on April 4, 1969, upon review of the record without a plenary hearing. Petitioner has, by presenting his claims to the state court on direct appeal, exhausted his state remedies as required by 28 U.S.C. § 2254. He is not required to raise these same grounds by collateral attack. Grundler v. State of North Carolina, 283 F.2d 798 (4th Cir. 1960).

Petitioner seeks relief on the following grounds: (1) A .22 caliber pistol admitted into evidence was procured through an unlawful search and seizure; (2) Incriminating statements were obtained as the result of illegal detention; (3) The trial court erred in refusing full examination of one witness against the petitioner; (4) Certain jury instructions were improperly permitted; (5) The trial court erred in not striking the Commonwealth's evidence; (6) The failure of the Virginia Supreme Court of Appeals to grant him an appeal or writ of error was a denial of due process.

The facts necessary to make a determination on these claims are not in dis-

pute. On February 12, 1967, petitioner attempted to sell a pistol at a pawn shop in Asheville, North Carolina. The North Carolina police on being informed of this, stopped petitioner and his wife, who were driving a 1966 Chrysler at the time. Petitioner's wife was carrying a .32 caliber Barutta in her pocketbook. Although the tactics used are in dispute, the officers obtained possession of the .32 caliber Barutta. Petitioner's wife was arrested for carrying a concealed weapon, and petitioner was charged with aiding and abetting the carrying of the concealed weapon.

The petitioner and his wife were taken to the police station about two or three miles away, and the Chrysler was parked outside the station. Petitioner was questioned about the ownership of the Chrysler and the .32 caliber Barutta. Without obtaining a search warrant, the police searched the Chrysler about thirty or forty minutes after the arrest, and a .22 caliber pistol belonging to petitioner was found in the glove compartment.

About two or three hours after being taken to the station, the petitioner asked to speak to Officer Edwards, whereupon he related the following story:

While hitch-hiking in Virginia the day before, petitioner was picked up by a man in the 1966 Chrysler. After travelling ten to fifteen miles, the man made improper advances. Petitioner told him he was not that kind of man. The man then turned onto a dirt road. After travelling about two miles, the man stopped the car and they both got out. As the man was coming around the back of the Chrysler, he pointed the .32 caliber Barutta at petitioner and pulled the trigger. The gun did not fire. Petitioner pulled out his .22 caliber pistol and shot the man four times. After picking up the .32 caliber Barutta, petitioner drove off in the Chrysler.

## I. SEARCH AND SEIZURE

Petitioner contends that the search of the 1966 Chrysler at the police station and the seizure of the .22 caliber pistol was illegal. The initial question which must be answered is whether the defendant has standing to challenge the search and seizure as being unconstitutional. I am convinced that the Fourth Amendment has not been violated with respect to petitioner.

■ I do not view standing as an outmoded requirement. The Fourth Amendment was enacted to secure the privacy of the people. See Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697, 702 (1960). If the privacy of a particular person has not been invaded, his Fourth Amendment rights have not been violated.

The leading case on standing is Jones v. United States, supra. Jones held the defendant in that case had standing in one of two ways. First, if possession both convicts and confers standing, standing is automatically conferred. This rule resulted from the contradictory position the government often took— the government alleged possession as the crime, yet denied possession for the purpose of standing. Secondly, anyone legitimately on the premises where a search occurs may challenge the legality of the search and seizure. Jones further held that "this would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched." 362 U.S. at 267, 80 S.Ct. at 734, 4 L.Ed.2d at 706.

■ The petitioner cannot bring himself within either of the two criteria conferring standing as set out in Jones. As to the first requirement, petitioner has not been charged with illegal possession of the .22 caliber pistol. Therefore, the state is not taking the contradictory position that was deemed sufficient in Jones to give standing. The second ground set out in Jones does not apply because petitioner was not lawfully using the Chrysler at the time of his arrest—his possession was larcenous.

In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the court decided the impact of Jones upon nonpossessory offenses. In Simmons two FBI agents went to one of

the petitioner's mother-in-law's home and asked to be permitted to search her home in connection with a robbery. There was a dispute whether the mother-in-law gave her consent. The agents uncovered two suitcases in her home. One contained a gun holster, a sack similar to the one used in the robbery, several coin cards, and bill wrappers from the bank robbed. In order to establish standing, one petitioner testified that the suitcase was similar to one he had owned, and that he was the owner of the clothing found inside the suitcase. This testimony was admitted against him at his trial. With regard to standing, the court held:

> This Court has never considered squarely the question whether defendants charged with nonpossessory crimes, like Garrett, are entitled to be relieved of their dilemma entirely.
>
> \* \* \* \* \* \*
>
> In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection. 390 U.S. at 391, 392 & 394, 88 S.Ct. at 975 & 976, 19 L.Ed.2d at 1257 & 1259.

*Simmons* does not apply to the present case. The present petitioner has not been required to testify on possession of the .22 caliber pistol in order to establish standing. The petitioner has not been forced to give up any constitutional right in order to establish standing.

*Jones* and *Simmons* are attempts to broaden the basis of standing. Therefore, the standing rules as applied before *Jones* have force today. Before *Jones,* the rule was stated that standing was established by *either* ownership or possession of the seized property *or* a substantial possessory interest in the premises searched. See Jones v. United States, supra. Also, the implication in

*Jones* and *Simmons* is that possession or ownership of the property seized, in itself, confers standing.

The court has been unable to discover any case where the either/or proposition has been directly applied. All cases dealing with standing have either had elements of both requirements or neither. No case can be found conferring standing where possession of the seized property was coupled with wrongful presence on the searched premises (as in the present case). In *Jones,* the defendant was imputed possession of the property for purposes of standing and was legitimately on the premises. In *Simmons,* the petitioner was in possession of the property and while not on the premises at the time of the search, he had been and could expect in the future to be legitimately on the premises. It would not be inaccurate to say that the petitioner reasonably expected a limited right to privacy in the premises searched. His interest in the premises could not be described as wrongful, as in the present case.

While no case can be found dealing with the exact facts of the present case, the court can find sufficient support for the principle that possession (or imputed possession under *Jones*) of the seized property will not support standing when coupled with the additional fact of wrongful presence on the premises searched.

In United States v. Konigsberg, 336 F.2d 844 (3rd Cir. 1964), the appellants hijacked 3000 men's suits from New York and took them to a vacant garage in New Jersey. None of the defendants had any lawful reason or right to be using the garage. While possession was a necessary element of the offense charged and would under *Jones* eliminate any necessity for establishing possession of the property seized, the court refused to find standing in the defendants.

In United States v. Kucinich, 404 F.2d 262 (6th Cir. 1968), an FBI agent was told by Hertz that two rented automobiles had not been returned. The agent, on the tip of a motel operator, located

one of the unreturned automobiles and arrested appellants who were in possession of it. The trunk of the automobile was opened with a key obtained from one of the appellants and inside stolen luggage was found. The appellants were convicted of possessing the stolen automobile and the stolen luggage. The court held that the automobile was being held on behalf of its owner, Hertz, and that the appellants lacked standing to challenge the search and seizure.

The court in Rodgers v. United States, 362 F.2d 358 (8th Cir. 1966), upheld the conviction of the defendant for possession of a shotgun with an illegal barrel. The court in denying standing held:

> It follows automatically, too, that this defendant has no standing to complain about the shotgun's seizure and its admission. The gun was contraband. It was partially visible in its paper sack wrapping. It was in plain sight on the floor under the driver's seat. It was readily recognized. And it reposed in a vehicle which was stolen, which was no longer in the defendant's possession, and which, at the time the gun was first seen and taken, had come into the custody of the state troopers as a car which the defendant was not authorized to possess. The search of that automobile at that time could not, under any circumstances, be unreasonable so far as this defendant was concerned. None of Rodgers' constitutional guarantees were violated. 362 F.2d at 362.

In two related cases, no interest in or presence on the searched premises (not wrongful presence or possession) was shown. In both of these cases possession was an element of the offense charged and, yet, standing was not allowed. First, in Fox v. United States, 381 F.2d 125 (9th Cir. 1967), the appellants were convicted on a marihuana violation. Two cars were stopped by the police. The evidence used against the appellants was found in a Pontiac. The court denied standing because the appellants were not in the presence of the Pontiac, and claimed no interest in it, or in the marihuana. In the second case, Cassady v. United States, 410 F.2d 379 (5th Cir. 1969), the conviction was based on the possession of stolen money orders and a stolen money order machine. Again two automobiles were stopped. Defendant was driving the first, and in the second, a Falcon, the evidence was found. The court denied standing because of the lack of any "interest, ownership, or otherwise" of the defendant in the Falcon.

Finally and most importantly, Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), must be considered. The petitioners had been convicted of the fraudulent and knowing transportation and concealment of illegally imported heroin. As to this offense once possession is proved, the other elements of the offense need not be separately demonstrated. In denying standing to petitioner Wong Sun to challenge the seizure and admission into evidence of the heroin, the court held:

> We must then consider the admissibility of the narcotics surrendered by Yee. Our holding, supra, that this ounce of heroin was inadmissible against Toy does not compel a like result with respect to Wong Sun. The exclusion of the narcotics as to Toy was required solely by their tainted relationship to information unlawfully obtained from Toy, and not by any official impropriety connected with their surrender by Yee. The seizure of this heroin invaded no right of privacy of person or premises which would entitle Wong Sun to object to its use at his trial. Cf. Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312. 371 U.S. at 491 and 492, 83 S.Ct. at 419, 9 L.Ed.2d at 458.

■ In all of the above cases (*Konigsberg, Kucinich, Rodgers, Fox, Cassady,* and *Wong Sun*), standing to challenge the search and seizure was denied although possession of the property was an element of the offense and thereby standing could be imputed under *Jones*.

If possession of the seized property is sufficient in itself to allow standing, the court in each of these cases should have allowed standing. While different reasons were ascribed for denying standing in each case, I am convinced that the results were dictated by a common sense approach to the Fourth Amendment— *both the search and the seizure must be unreasonable.* The Fourth Amendment was enacted to secure the privacy of the people. If a person places his property in an area where he can reasonably expect privacy, the Fourth Amendment protects that privacy. No one can expect or demand privacy in premises or places which are wrongfully possessed or in which no interest or ownership can be shown; as to these persons, the search of the premises is not unreasonable.

The court in *Rodgers,* as partial reason for denying standing, stated that the gun was contraband and, also, that it was in plain sight. The police do not have greater authority to make searches and seizures for contraband than for other types of evidence. Under *Jones* standing would be conferred if possession of the contraband is the offense, and the person is legitimately on the premises. Nor does the plain sight rule of searches and seizures have any connection with the standing requirements.

Two cases have held that possession of stolen automobiles is sufficient to confer standing. Cotton v. United States, 371 F.2d 385 (9th Cir. 1967); Simpson v. United States, 346 F.2d 291 (10th Cir. 1965). These cases, however, are neither controlling nor contrary to the present case. Both *Cotton* and *Simpson* involved convictions for the possession of stolen automobiles. The holding in *Jones* was applicable in both cases. The possession of the searched automobiles that was sufficient for conviction was sufficient for standing. In the present case, the state is not taking the contradictory position that resulted in the *Jones* rule.

The court does not see the decision today as a departure from the prior decisions. While the rule had always been stated either ownership or possession of the seized property or a substantial possessory interest in the premises searched confers standing, the courts have uniformly denied standing when possession (or imputed possession under *Jones*) of the property seized was coupled with the wrongful possession of the premises searched. In the present case, the court refuses to allow petitioner standing to challenge the search of an automobile, which petitioner was in possession of only by reason of the murder he committed. As to petitioner, *the search* of the automobile was not unreasonable. While common sense indicates this result, I find the cases logically require it.

## II. ILLEGAL DETENTION

Petitioner asserts that he was unlawfully detained for two to four hours before he made the incriminating statements. The court need not determine whether or not petitioner was actually illegally detained, because it is clear that as in Kulyk v. United States, 414 F.2d 139 (5th Cir. 1969), no relief is available.

In *Kulyk* the appellant had been arrested by the local police in Worth County, Georgia. The court found that appellant's confession, three days after the arrest, was made during a period of illegal detention by the state authorities. The court stated:

This alone [the illegal detention], however, does not make the confession inadmissible. The right under the federal rules to be promptly taken before a magistrate has not been given constitutional status and has not been applied to persons in state custody. Culombe v. Connecticut, 1961, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037; Barnett v. United States, 5 Cir. 1967, 384 F.2d 848; Edwards v. Holman, 5 Cir. 1965, 342 F.2d 679. 414 F.2d at 141 and 142.

The alleged illegal detention in the present case was by state police and petitioner was tried in the state courts. Under *Kulyk* he has not raised a consti-

tutional issue to be heard on habeas corpus. Further, petitioner is not presently contending that the confession was obtained in the absence of the *Miranda* warnings. The trial court has already rejected that argument upon sufficient evidence.

### III. EXAMINATION WITNESSES

Petitioner asserts the trial court erred in refusing his counsel the right to fully examine Officers C. F. Edwards and Charles W. Bralley in regard to whose interest they were protecting and representing when they gave the *Miranda* warnings to petitioner.

 The court can find no error in regard to this matter. Under Miranda v. State of Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966), it is completely irrelevant as to whose interest the police officer is subjectively serving when he gives the required warnings. Petitioner has no constitutional right to introduce collateral and irrelevant issues into the trial. Morris v. Boles, 386 F.2d 395, 404 (4th Cir. 1967).

### IV. JURY INSTRUCTIONS

██ Petitioner contends that certain jury instructions granted by the trial court were improper. Improper jury instructions raise constitutional issues only in circumstances "impugning fundamental fairness or infringing specific constitutional protections." Grundler v. State of North Carolina, 283 F.2d 798, 802 (4th Cir. 1960). The instructions offered at petitioner's trial neither impugned fundamental fairness nor infringed specific constitutional rights.

### V. STRIKING THE EVIDENCE

██ Petitioner asserts the trial court erred in not striking the evidence. The only constitutional question this claim raises is to the insufficiency of the evidence. In a habeas corpus proceeding a federal court may not set aside a state court conviction under the due process clause of the Fourteenth Amendment on the grounds of insufficiency of evidence unless the conviction was "totally devoid of evidentiary support." Faust v. State of North Carolina, 307 F.2d 869, 872 (4th Cir. 1962), cert. denied, 371 U.S. 964, 83 S.Ct. 547, 9 L.Ed.2d 511 (1963). There is ample evidence in the record demonstrating the guilt of petitioner.

### VI. FAILURE TO GRANT AN APPEAL OR WRIT OF ERROR

 Petitioner contends the he was denied due process by the failure of the Virginia Supreme Court of Appeals to grant him an appeal or writ of error. Although petitioner does not make it clear, he apparently brings this claim in reference to the habeas corpus petition filed on October 17, 1968, in the Circuit Court of Russell County. The record establishes that petitioner was given a direct appeal from his conviction. As to the habeas corpus petition, the record does not disclose that petitioner ever filed a Notice of Appeal and Assignment of Error as required by Rule 5:1 § 4 of the Rules of the Supreme Court of Appeals of Virginia. Due process of law does not require that the Virginia Supreme Court of Appeals automatically hear an appeal on all denials of habeas corpus petitions. Petitioners in habeas corpus must follow the rules of court as must all other parties who wish to appeal.

 If the petitioner wishes to appeal this judgment or any part thereof, he may do so by filing with the clerk of *this* court a notice of appeal. Failure to file the notice of appeal within 30 days may result in a denial of the right to appeal. The notice shall state the following:

1. The party or parties taking the appeal;

2. The judgment, order or part thereof appealed from; and

3. The court (United States Court of Appeals for the Fourth Circuit) to which the appeal is taken.

For the foregoing reasons, it is adjudged and ordered that the petition for a writ of habeas corpus be dismissed and the writ denied.

The clerk is directed to certify copies of this opinion and judgment to the petitioner and to the respondent.