STATE of Missouri, Respondent,

v.

Dwight LAUGHLIN, Appellant.

Dwight LAUGHLIN, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 18799, 19913.

Missouri Court of Appeals,
Southern District,
Division Two.

June 19, 1995.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

Appellant, Dwight Laughlin, was found guilty by a jury of first degree burglary, § 569.160,[1] and first degree property damage, § 569.100. The trial court, finding Appellant a prior offender and a persistent offender, sentenced him to 30 years' imprisonment for the burglary and 10 years' imprisonment for the property damage, to be served consecutively. Appellant brings appeal 18799 from that judgment.[2]

While appeal 18799 was pending, Appellant commenced an action per Rule 29.15[3] to vacate the judgment. After an evidentiary hearing, the motion court entered judgment denying relief. Appellant brings appeal 19913 from that judgment.

We consolidated the appeals, Rule 29.15(*l*), but address them separately in this opinion.

### Appeal 18799

■ Appellant's first point contends the trial court erred in overruling his "motion for judgment of acquittal" at the close of all the evidence, because the evidence was insufficient to support the conviction of first degree burglary. In reviewing a challenge to the sufficiency of the evidence, we accept as true all of the evidence favorable to the verdict, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary. *State v. Grim,*

---

1. References to statutes are to RSMo 1986.

2. Appellant does not contest his conviction for first degree property damage.

3. Rule references are to Missouri Rules of Criminal Procedure (1995).

854 S.W.2d 403, 405 (Mo. banc 1993), *cert denied,* — U.S. ——, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). Review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found Appellant guilty beyond a reasonable doubt. *Id.*

■ On February 3, 1993, Officer Randy Sweet responded to an "alarm call" at the post office in Neosho. He searched the perimeter of the building, found it to be secure, and then left.

A few minutes later, around 9:00 p.m., the alarm sounded again. This time, Officers Jim Basinger and Tim Bender went to the scene. They noticed the "caulking compound" on one window had been broken away, and another window was open about an inch. The wire grill behind the latter window was loose.

After two other officers arrived, Officer Bender went to the front of the building. He saw Appellant "hanging off the ledge." Bender shouted at Appellant to stop, and Appellant immediately climbed to the roof of the building. Officer Basinger, alerted by Bender's cry, went to the northwest corner of the building. There, Basinger saw Appellant "peeking over the edge of the west side of the building."

Police officers surrounded the building. Deputy Sheriff Mike Smith arrived at the scene with a search dog. He entered the building through the open window with another officer and the dog. The trio searched the first room they entered, then Smith gave a "standard warning" for anyone inside the building to "show themselves." After three warnings, Deputy Smith released the dog. Appellant was found lying on some pipes in the basement. The police searched the rest of the building, but found no one else.

Several items of evidence were collected from the roof of the building, including a plastic bag with letters containing credit cards, a "scanner" set to the Neosho Police frequency, a flashlight, a crowbar, and a paper bag with money and stamps inside. The

vault door to the safe inside the building was open, with the combination dial removed and lying on the floor. The police found a crowbar, a pipe wrench, three screwdrivers, a hammer, and a metal punch in front of the safe.

Section 569.160.1 provides:

"A person commits the crime of burglary in the first degree if he knowingly enters unlawfully ... in a building ... for the purpose of committing a crime therein, and ... while in the building ...:

.     .     .     .     .

(3) There is present in the structure another person who is not a participant in the crime."

The Third Amended Information stated Appellant "knowingly entered unlawfully in a building, ... for the purpose of committing stealing therein, and while in such building there was present in such building Mike Smith, a person who was not a participant in the crime." [4]

Appellant contends there was insufficient evidence to show he had the "intent to commit a crime in the building when he entered the second time, the only time during which there was a nonparticipant in the crime present." Appellant claims he was merely trying to elude the police when he reentered the building from the roof.

■ Because there is rarely direct evidence of the intent of the culprit at the time of the commission of the crime, the requisite intent may be proved by circumstantial evidence. *State v. Faber,* 499 S.W.2d 790, 794[9] (Mo.1973). That nothing was stolen is unimportant in determining a culprit's intent. *State v. Cameron,* 604 S.W.2d 653, 661–2[30] (Mo.App.E.D.1980).

Appellant did not testify at trial. Therefore, his theory depends on inferences he says should be drawn from the testimony of the officers who responded to the scene. The flaw in Appellant's argument lies in his assumption that there is only one inference to be drawn from that testimony.

---

4. Appellant does not question whether a police officer who enters the building in an attempt to capture the perpetrator can qualify as a nonparticipant in the crime under the first degree burglary statute. Therefore, we do not address the issue.

The jury did not have to accept Appellant's theory of the crime. They could have believed Appellant reentered the building to complete the burglary, not to escape. He never attempted to flee; rather, he hid in the basement. He also left several items on the roof, suggesting he intended to return later to collect them.

Appellant's earlier flight to the roof could reasonably be viewed as a disruption of his attempt to steal money, stamps and credit card numbers from the building. Although he took some tools with him, he also left several items beside the vault. One important item he took with him was the scanner, which indicated he was monitoring the activities of the police. The police had come once before and left. Appellant could have believed he could avoid detection again and then complete the burglary.

We hold the State produced sufficient circumstantial evidence to support a finding that Appellant entered the building from the roof with the intent to steal.[5]

Appellant's first point is denied.

In his second point, Appellant contends the trial court erred in "overruling Appellant's objection to evidence of burglar tools found in ... Foley's car."

On direct examination, Officer John Trimble testified he saw a "brown sedan" parked near a hospital. Appellant's trial counsel objected on grounds that such evidence was irrelevant and without proper foundation. At sidebar he stated, "I don't see that this brown Pontiac being located by the hospital is relevant." The prosecutor assured the judge there would be testimony that Appellant drove the car to the spot where it was found and "burglar tools" were found inside the car. The prosecutor added, "I'm not going to call them that, but that's what would be inside that car." The judge then overruled Appellant's objection.

The testimony of Officer Trimble continued:

"Q [W]hen you went to the hospital and found this brown car, did you run the plates to see who it belonged to?

A Yes, sir. I did.

Q And who is that?

A It came back to, I believe it was, a ... Foley out of Joplin.

Q All right. Do you know whether or not that ... Foley is associated with or somehow related to the Defendant?

A I understand—

[Appellant's trial counsel]: Judge, I would object. I think a foundation—proper foundation needs to be laid before he can answer that question.

THE COURT: Sustained.

. . . . .

Q Did you know where [Appellant] had been living before this evening?

A No, sir. I did not.

Q All right. Did you make an attempt to determine whether or not [Appellant] was ... somehow associated with ... Foley?

A We had received that information prior to finding the car. That's why we were looking for it.

. . . . .

Q .... [D]id you inventory that car?

A Yes, sir. I did.

Q All right. And did you find any of the items that you know belonged to [Appellant] inside the car?

A Not that I know for a fact belonged to him. No, sir.

---

5. The record does not show whether Deputy Smith entered the building before or after Appellant reentered it from the roof. However, Appellant's first point does not claim this gap in the proof renders the evidence insufficient to support the verdict. Any such contention would be futile. Section 569.160.1, quoted in part *supra*, clearly provides that if a person enters a building unlawfully for the purpose of committing a crime therein and, while he is inside, there is another person in the building who is not a participant in the crime, the intruder is guilty of burglary in the first degree. In *State v. Seddens*, 770 S.W.2d 381, 382 (Mo.App.E.D.1989), the Eastern District of this Court emphasized that the nonparticipant need not be in the building when the intruder enters. In *Seddens*, a conviction of burglary in the first degree was affirmed where the inhabitants of a house were gone when the intruder entered, but returned while he was still inside. Consequently, even if Deputy Smith entered the building after Appellant had reentered from the roof, the evidence was sufficient to support the verdict.

Q  All right.  What did you find inside the car?

A  The—Behind the passenger's seat, there was a hammer.  There was a pair of tin snips.  There was a portable hacksaw; in other words, a small folding type hacksaw.  There was also two pair of men's gloves."

The above passage forms the basis for Appellant's second point.  Appellant's trial counsel made two objections.  The first was overruled only after the prosecutor assured the judge that the relevance of the evidence would be established.  At this point, the only testimony presented was that a brown sedan was parked near the hospital.  No evidence had been offered about items found within the car, nor was there any link established between Appellant and the car.

■  After the prosecutor asked Officer Trimble whether Foley was associated with Appellant, Appellant's trial counsel objected on grounds of lack of foundation.  The trial court sustained this objection.  No other relief was requested.  We therefore assume the corrective action taken by the court was adequate.  *State v. Babbitt,* 639 S.W.2d 196, 199[8] (Mo.App.E.D.1982).  Because Appellant received the only relief requested, he cannot now complain of error.  *State v. Mitchell,* 751 S.W.2d 65, 67 (Mo.App.E.D. 1988).  After receiving that relief, he registered no further objection to the inquiry about Foley or the car.

■  Additionally, the admission of irrelevant evidence is reversible only upon a showing of prejudice.  *Robertson v. State,* 464 S.W.2d 15, 20[7] (Mo.1971).  Appellant has failed to show how the above testimony was prejudicial.  The State did not establish a connection between the car and Appellant.  Although the prosecutor promised the court at the sidebar conference he would present evidence showing Appellant drove the car to the spot where it was found by police, no such evidence was ever presented.  Officer Trimble admitted he did not know whether the items found inside the car belonged to Appellant.  Finally, the items were never introduced into evidence.

Appellant's second point is denied.

■  Appellant's third (and final) point contends the trial court erred in allowing the State to amend the information the "day of trial" from second degree burglary to first degree burglary.[6]  Appellant raises the point for the first time on appeal, therefore we review for plain error.  *State v. Simpson,* 846 S.W.2d 724, 726 (Mo. banc 1993).  We will reverse Appellant's conviction only if the alleged error resulted in manifest injustice or a miscarriage of justice.  *Id.* at [1].

Rule 23.08 provides: "Any information may be amended ... at any time before verdict or finding if no additional or different offense is charged and if a defendant's substantial rights are not thereby prejudiced."

The first issue is whether the State charged a different offense when it filed the Third Amended Information.

Count I of the Second Amended Information, filed April 15, 1993, charged:

"defendant, in violation of Section 569.160, RSMo, committed the class B felony of burglary in the first degree, punishable upon conviction under Section 558.011.1(2), RSMo, in that on or about February 3, 1993 in the County of Newton, State of Missouri, the defendant knowingly entered unlawfully in a building, located at 101 E. Hickory, Neosho, Missouri and owned by the United States Postal Service, for the purpose of committing stealing therein[.]"

The Third Amended Information added the following phrase: "and while in such building there was present in such building Mike Smith, a person who was not a participant in the crime."  Appellant contends the Second Amended Information was "actually a charge of second degree burglary."  Therefore, says Appellant, the Third Amended Information impermissibly increased the charge.

■  However, the Third Amended Information did not charge a different offense; it merely correctly charged Appellant with first degree burglary.  An amendment which cor-

6.  The Third Amended Information was filed April 16, 1993.  Trial began April 21, 1993.

rects a defective information is permissible. *Johnson v. State,* 485 S.W.2d 73, 75 (Mo. 1972); *State v. Gardner,* 522 S.W.2d 323, 324 (Mo.App.1975).

■ The Second Amended Information was obviously an attempt to charge Appellant with first degree burglary. Appellant was charged with violating 569.160, the statute for first degree burglary, and the description of the crime was "burglary in the first degree." The offense was correctly labeled a class B felony, not a class C felony. The Third Amended Information merely served to add the final element to the offense charged; it did not charge a new offense.

■ The next issue is whether the Third Amended Information prejudiced Appellant. The test for prejudice under Rule 23.08 is whether defendant's evidence would be equally applicable, and his defense to the charge equally available, after the amendment. *State v. Bratton,* 779 S.W.2d 633, 634[2] (Mo.App.W.D.1989). Appellant's trial counsel stated during Appellant's postconviction hearing his "trial strategy was that the burglary in the first degree was only a trespass." This defense was certainly available to Appellant both before and after the Third Amended Information was filed. Indeed, the filing of the Third Amended Information was not a surprise to Appellant.

Appellant's trial counsel gave the following testimony during the postconviction hearing:

"Q [prosecuting attorney]: [Were you] surprised by the element of adding Mike Smith in the third amended information[?]
A No. I knew that you were going to have to do that ... in order to make burglary in the first degree; so I certainly couldn't have been.

. . . . .

Q And you knew that in burglary in the first degree, Smith was the one I was talking about being in the building. . . . or another law enforcement officer.
A Yeah, some—one of the police officers. I would assume that based on the discovery reports.

. . . . .

Q So the burglary in the first degree was always alleged, it's just that the final ele-

ment, ... was added on April 16, '93; but you knew that element was there anyway?
A And I assumed you were eventually, when you sit down to look at your police reports and look at your information, would discover that; but I wasn't going to tell you about that."

Obviously, Appellant's trial counsel knew the original charge was first degree burglary and the State had simply failed to allege one element. The filing of the Third Amended Information did not prejudice Appellant; it only assured that all elements of first degree burglary were pled.

■ The Second Amended Information notified Appellant that he was charged with a class B felony and that punishment would be assessed under § 558.011.1(2). It therefore sufficiently notified Appellant of the charge and range of punishment. *See: State v. Fenton,* 633 S.W.2d 78, 80 (Mo.1982).

We hold Appellant was not prejudiced by the filing of the Third Amended Information. Appellant's third point is denied.

Judgment affirmed.

### Appeal 19913

■ Appellant's sole point in this appeal contends he received ineffective assistance of counsel in that his trial counsel "failed to object to the State's amending the information the week of trial from second degree burglary to first degree burglary."

A movant cannot prevail on a claim of ineffectiveness of counsel because counsel failed to make an objection if such objection would have been denied. *Brownlow v. State,* 818 S.W.2d 302, 304[1] (Mo.App.S.D.1991). Because we hold the State was authorized to file the Third Amended Information, Appellant's trial counsel did not render ineffective assistance in failing to object to it.

The point is denied, and the order denying postconviction relief is affirmed.

GARRISON, P.J., and PREWITT, J., concur.